UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  | : |  |
|---|---|---|
| SEAN JELEN, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : | 18cv680 |
| -against- | : |  |
|  | : | OPINION & ORDER |
| UNITED STATES MARSHALS SERVICE, | : |  |
| *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, Senior United States District Judge:

Pro se Plaintiff Sean Jelen brings civil rights claims and medical malpractice claims against an amalgam of federal, state, and private defendants. Defendants United States Marshals Service ("USMS"), United States Marshal Michael Greco,[1] and Deputy United States Marshals Kevin Kamrowski, Ivan Santos, Jamal Brown (collectively, the "Federal Defendants") move to dismiss Jelen's Second Amended Complaint (the "Amended Complaint") under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Westchester County and Westchester County Correction Commissioner Joseph K. Spano[2] (collectively, the "Westchester Defendants") move to dismiss the Amended Complaint pursuant to Rule 12(b)(6). And Defendants Beth Israel Hospital, Joshua Alge, and Temina Levine (collectively, the "Beth Israel Defendants") move to dismiss the Amended Complaint pursuant to Rule 12(b)(1). For the following reasons, Defendants' motions are granted and this action is dismissed.

---

[1]     Michael Greco is no longer the United States Marshal for the Southern District of New York. To the extent Greco is sued in his official capacity, this Court substitutes the current Marshal, Ralph Sozio. See Fed. R. Civ. P. 25.

[2]     The Amended Complaint misidentifies Commissioner Spano as "Paul." (Second Am. Compl., ECF No. 48 ("Am. Compl."), ¶ 6.)

BACKGROUND

        For purposes of these motions, this Court liberally construes all of the allegations in the sprawling and prolix 44-page Amended Complaint.  On July 15, 2016, Jelen pled guilty to bank fraud and attempted bank fraud in the Middle District of Pennsylvania.  (See Am. Compl. ¶ 15.)  The district court scheduled Jelen's sentencing for January 8, 2018.  (Am. Compl. ¶ 18.)  On January 6, 2018—two days before his scheduled sentencing—Jelen was admitted to Mount Sinai Hospital in Brooklyn, New York ("Mount Sinai Brooklyn"), complaining of abdominal pain and rectal bleeding.  (Am. Compl. ¶¶ 19–20.)  When Jelen failed to appear for sentencing, the district court issued an arrest warrant (the "Warrant").  (Am. Compl. ¶ 21.)  Execution of the Warrant was conditioned on Jelen's release from the hospital.  (Am. Compl. ¶ 21.)

        On January 11, 2018, Jelen was transferred from Mount Sinai Brooklyn to Mount Sinai Beth Israel Hospital in Manhattan, New York ("Beth Israel").  (Am. Compl. ¶ 22.)  On January 17, 2018, Deputy U.S. Marshals Kamrowski and Brown entered Jelen's hospital room and informed him that he was under arrest.  (Am. Compl. ¶¶ 25–26.)  Jelen objected, claiming that the Warrant could not be executed because he was in the hospital.  (Am. Compl. ¶ 27.)  Kamrowski, in the presence a physician's assistant and a nurse—Defendants Alge and Levine, respectively—informed Jelen that Beth Israel had, in fact, discharged him.  (Am. Compl. ¶ 28.)  Levine removed Jelen's intravenous line so that he could be escorted from the hospital.  (Am. Compl. ¶ 26.)  As Kamrowski effected the arrest, Jelen demanded to speak with legal counsel or a family member.  (Am. Compl. ¶ 28.)  Kamrowski denied Jelen's request and required Jelen to surrender his personal effects, including his watch, cellphone, wedding band, and wallet.  (Am. Compl. ¶¶ 28–30.)  Jelen alleges that Alge fabricated the discharge paperwork because he had

not been informed that he was being discharged until Kamrowski and Brown appeared at his bedside.  (Am. Compl. ¶¶ 103–05.)

According to Jelen, Kamrowski—apparently believing Jelen was Jewish—mocked him during transport to the Daniel Patrick Moynihan United States Courthouse in lower Manhattan (the "Moynihan Courthouse").[3]  (Am. Compl. ¶ 34.)  Upon arrival at the Moynihan Courthouse, Jelen asserts that unidentified marshals escorted him to a holding cell with no toilet paper and ignored his requests for toilet paper.  (Am. Compl. ¶ 35.)  After an unspecified period of time, an unidentified marshal removed Jelen from the holding cell and brought him to another detention area where a physician from the Metropolitan Correctional Center ("MCC") reviewed Jelen's medical records.  (Am. Compl. ¶¶ 37–38.)  When Jelen advised the physician that he had been hospitalized for complications related to Crohn's disease, the physician instructed Jelen to remove his trousers and underpants and examined Jelen's anus and genitalia in the presence of other detainees and prison staff.  (Am. Compl. ¶ 38.)  Following that examination, the physician concluded that MCC could not accept Jelen as a detainee.  (See Am. Compl. ¶ 40.)  The MCC physician advised Kamrowski and Brown that Jelen should not be returned to the hospital.  (Am. Compl. ¶ 89(v)(B).)  Instead, they transported Jelen to the medical unit at the Westchester County Jail (the "Westchester Jail").  (See Am. Compl. ¶¶ 45, 51–53.)  Prior to his transport to the Westchester Jail, Kamrowski allegedly physically assaulted Jelen and again denied his request to speak with an attorney.  (Am. Compl. ¶¶ 40–41.)

When Jelen arrived at the Westchester Jail, he demanded to be taken to a hospital and claimed that he had been unlawfully arrested.  (See generally Am. Compl. ¶¶ 43–50.)  Jelen

---

[3]      During his sentencing in the Middle District of Pennsylvania, Jelen claimed to be a devout Roman Catholic who previously acted as an alter server.  See United States v. Jelen, No. 3:16-cr-00156-MEM, ECF No. 203 ("Sentencing Tr."), at 31 (M.D. Pa. Jan. 31, 2018).

claims he was in great pain and was denied his prescription pain medication.  (See Am. Compl.
¶¶ 43, 46–47, 49, 51).  Later that evening, Jelen was placed in a cell in the Westchester Jail
medical ward.  (Am. Compl. ¶¶ 42–53.)

        The next morning, Deputy U.S. Marshal Santos explained to Jelen that he was
being transported to the federal courthouse in White Plains, New York (the "White Plains
Courthouse").  (Am. Compl. ¶ 55.)  Jelen allegedly informed Santos that he needed bathroom
access, but Santos ignored that request and drove Jelen to the White Plains Courthouse.  (Am.
Compl. ¶ 56.)  There, Jelen claims he was placed in a holding cell with an inoperative toilet.
(Am. Compl. ¶ 57.)

        Later, Jelen appeared with a public defender before a magistrate judge.  (Am.
Compl. ¶ 60.)  At the hearing, Jelen was shown an affidavit in which Santos attested that Jelen
previously "checked himself [into a hospital] for mental health" purposes.  (Am. Compl. ¶ 60.)
Jelen claims that Santos's assertion was a "patent lie" designed to continue his false arrest.  (Am.
Compl. ¶ 60.)  The magistrate judge ordered Jelen's release and directed that he be reunited with
his property.  (Am. Compl. ¶ 61.)  However, Jelen claims that Santos refused to expedite the
return of the property.  (Am. Compl. ¶¶ 67–68.)  Upon his release, Jelen and his sister drove to
Manhattan and secured the return of his property.  (Am. Compl. ¶ 70.)  All of these events—
from Jelen's arrest at Beth Israel to his release from custody—unfolded over approximately 24
hours.

        On January 25, 2018, Jelen filed this action.  (ECF No. 1.)  On January 31 2018,
the district judge in the Middle District of Pennsylvania sentenced Jelen principally to 70 months
of imprisonment and remanded him to the custody of the Bureau of Prisons.

DISCUSSION

I.     Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).  If, however, "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." Tandon, 752 F.3d at 243 (quotation marks omitted). "In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" Tandon, 752 F.3d at 243 (quoting Makarova, 201 F.3d at 113).

On a motion to dismiss under Rule 12(b)(6), a court accepts all facts alleged in a complaint as true and draws all reasonable inferences in the plaintiff's favor. ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). To survive a motion to dismiss, the court must find the claims rests on factual allegations that "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quotation marks omitted)). "A court presented with a motion to dismiss under both Rule

12(b)(1) and Rule 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Encarnacion v. RMS Asset Mgmt. LLC, 2018 WL 4572240, at *2 (S.D.N.Y. Sept. 24, 2018) (quotation marks omitted); see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

"[W]hen [a] plaintiff proceeds pro se, as in this case, a court is obliged to construe his pleadings liberally, particularly when [it] allege[s] civil rights violations."  McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).  Therefore, this Court affords Jelen "special solicitude" by interpreting his complaint "to raise the strongest claims that it suggests." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018).

II.     The Federal Defendants

   A.   Federal Tort Claims Act

   To begin, Jelen brings a claim under the Federal Tort Claims Act ("FTCA")— presumably against the USMS—for false arrest and false imprisonment.  See 28 U.S.C. § 2680(h).  The FTCA waives the federal government's sovereign immunity in tort suits for money damages for:

> [P]ersonal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  "However, under the FTCA, only the United States may be liable for torts committed by federal agencies and their employees, and not the agencies and officials themselves . . . ."  Cunningham v. U.S. Marshal Serv., 2006 WL 8446513, at *2 (S.D.N.Y. May 25, 2006) (emphasis added); see Zandstra v. Cross, 2012 WL 383854, at *3 (S.D.N.Y. Feb. 6,

2012) (dismissing FTCA claim against the USMS for lack of subject matter jurisdiction);

Toomer v. County of Nassau, 2009 WL 1269946, at *10 n.12 (E.D.N.Y. May 5, 2009) (noting

that "[t]he USMS . . . is not a proper defendant under the FTCA").  Therefore, "[a]ny tort claim

against the USMS . . . can only be maintained against the United States under the FTCA."

Toomer, 2009 WL 1269946, at *10 n.12.  Jelen does not name the United States as a defendant

in this action, and therefore his FTCA claim against the USMS is dismissed.[4]  Cunningham,

2006 WL 8446513, at *2.

   Moreover, "even if th[is] Court [were to] substitute[] the United States for the

USMS for the purposes of [its] analysis," Jelen's claim would be dismissed nevertheless.

Toomer, 2009 WL 1269946, at *10 n.12.  "The FTCA requires that a claimant exhaust all

administrative remedies before filing a complaint in federal district court."  Celestine v. Mount

Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005).  Indeed, "[a]n action shall not

be instituted" under the FTCA "unless the claimant shall have first presented the claim to the

appropriate Federal agency and his claim shall have been finally denied by the agency in writing

and sent by certified or registered mail."  28 U.S.C. § 2675(a).  "[A] claim shall be deemed to

have been presented when a Federal agency receives from a claimant . . . an executed Standard

Form 95 or other written notification of an incident, accompanied by a claim for money damages

in a sum certain."  28 C.F.R. § 14.2(a).  "The failure of [the] agency to make final disposition of

a claim within six months after it is filed shall . . . be deemed a final denial of the claim for

purposes of" the exhaustion requirement.  28 U.S.C. § 2675(a).  "Th[e] [exhaustion] requirement

is jurisdictional and cannot be waived."  Celestine, 403 F.3d at 82.

---

[4]  This Court previously advised Jelen that the United States is the only proper defendant under the FTCA during a September 20, 2018 pre-motion conference.  (Sept. 20, 2018 Conference Tr., ECF No. 36 ("PMC Tr."), at 4.)

Here, Jelen claims he satisfied the FTCA's exhaustion requirement by submitting "full, written complaints . . . to [the] USMS and the [Department of Justice] via their websites, and to their respective inspector generals" in January 2018.  (Am. Compl. ¶ 71.)  The Federal Defendants dispute Jelen's claim and offer an affidavit from the USMS's Office of General Counsel.  The affiant affirms that, after searching the relevant records, the office was unable to locate any FTCA claim by Jelen.  (Decl. of Gerald M. Auerbach, ECF No. 76, ¶¶ 4–5.)  Instead, Jelen submitted a complaint to the Department of Justice ("DOJ") using its Office of Inspector General's internet "Hotline" form.  (Suppl. Decl. of Brandon H. Cowart, ECF No. 105 ("Cowart Decl."), ¶ 3.)  The DOJ forwarded that complaint to the USMS's Office of Professional Responsibility for review, and the matter was administratively closed on February 14, 2018. (Cowart Decl. ¶ 4.)

Setting aside whether Jelen's online submission to the DOJ is sufficient to meet the FTCA's "written notification" requirement, his submission does not contain "a claim for money damages in a sum certain."  (See Cowart Decl., Ex. A.)  Thus, Jelen failed to exhaust his administrative remedies, and his FTCA claim is dismissed for this additional reason.  See Roberson v. Greater, 2018 WL 2976024, at *3 (S.D.N.Y. June 12, 2018) (dismissing FTCA claim where plaintiff appeared to submit administrative tort claim to the incorrect federal agency and did not state a claim for money damages in a sum certain); Mohamed v. F.B.I., 2015 WL 6437369, at *6 (S.D.N.Y. Oct. 21, 2015) ("The[] main deficiency is failure to state a sum certain . . . ."); Herbst v. U.S. Postal Serv., 953 F. Supp. 2d 463, 469–70 (E.D.N.Y. 2013) (dismissing FTCA claim for failure to exhaust where plaintiff sent "numerous letters . . . to his supervisors within the USPS and various congressmen," but "there [was] no evidence that plaintiff included a sum certain in any of these communications").

    B.  <u>Constitutional Claims under Bivens</u>

        The Amended Complaint is replete with allegations that the Federal Defendants violated Jelen's constitutional rights.  This Court construes these allegations as asserting claims under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1999).  In <u>Bivens</u>, the Supreme Court recognized an implied cause of action for money damages to compensate plaintiffs for certain constitutional violations committed by federal officers. <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1851–52 (2017).  A <u>Bivens</u> claim can only be maintained against federal officers in their individual capacities.  <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994) (noting that sovereign immunity prevents plaintiffs from bringing <u>Bivens</u> actions against the United States, federal agencies, and individual federal defendants in their official capacities).  Thus, to the extent the Amended Complaint alleges <u>Bivens</u> claims against the USMS or against the remaining Federal Defendants acting in their official capacities, those claims are dismissed for lack of subject matter jurisdiction.  <u>See</u> <u>Robinson</u>, 21 F.3d at 510; <u>Morrison v. United States</u>, 2019 WL 5295119, at *2 (S.D.N.Y. Oct. 18, 2019).

        However, the Amended Complaint also names Kamrowski, Brown, Santos, and Greco as defendants in their individual capacities.  Read liberally, the Amended Complaint alleges the following <u>Bivens</u> claims for violation of Jelen's: (1) Fourth Amendment rights by all four defendants; (2) Eighth Amendment rights by Kamrowski, Brown, and Santos; and (3) Fifth Amendment rights by Santos.

        i.  <u>Fourth Amendment Violations</u>

        Jelen claims that, at Greco's direction, he was falsely arrested and imprisoned by Kamrowski, Brown, and Santos.  "A <u>Bivens</u> claim for false arrest [and false imprisonment] is

based on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause." Williams v. Young, 769 F. Supp. 2d 594, 602 (S.D.N.Y. 2011). Claims for false arrest and false imprisonment under Bivens are governed by state substantive law. See Quinoy v. Pena, 2014 WL 1998239, at *7 (S.D.N.Y. May 14, 2014); Davis v. United States, 430 F. Supp. 2d 67, 79 (D. Conn. 2006). "Under New York state law, to prevail on a claim of false arrest [or false imprisonment] a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Jocks v. Tavernier, 316 F.3d 128, 134–35 (2d Cir. 2003) (quotation marks omitted); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). "Where an individual's arrest is effectuated pursuant to a warrant, there can be no claim for false arrest or unlawful imprisonment." Little v. City of New York, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007). A "warrant must be executed in conformity with its terms." Simon v. City of New York, 893 F.3d 83, 88 (2d Cir. 2018).

Jelen does not appear to challenge the validity of the Warrant. Rather, he avers that Kamrowski and Brown improperly executed the Warrant by arresting him before his release from the hospital. Yet, as the Federal Defendants observe, Jelen acknowledges he was discharged by Beth Israel at the time of his arrest. (See, e.g., Am. Compl. ¶ 28 ("Kamrowski asserted that the hospitalized plaintiff had just been discharged moments ago, while gesturing to Levine."); Am. Compl. ¶ 103 ("Defendant Alge . . . negligently discharged the plaintiff."); Am. Compl. ¶ 107 ("Alge wrongfully discharged the plaintiff . . . .").) In an effort to revive this claim, Jelen asserts that his "discharge" was irrelevant to execution of the Warrant, which was conditioned specifically on his "release" from Beth Israel. And since "there [is] a plain difference between discharge and release," Jelen claims he was falsely arrested and imprisoned.

(Pl.'s Resp. to Defs.' Collective Mots. to Dismiss, ECF No. 94 ("Opp'n"), at 35–36.)
Apparently, Jelen believes that Kamrowski and Brown were required to wait until he stepped
outside of the hospital to execute the Warrant.  (Opp'n, at 32.)  That argument is absurd and
elevates form over substance.  The notion that deputy marshals should stake out every egress at a
major New York hospital and wait out Jelen—who might hide indefinitely somewhere in the
hospital complex—raises serious public safety concerns.

And even if "release" and "discharge" are not synonymous, Jelen's Fourth
Amendment claim would still fail because Kamrowski and Brown enjoy qualified immunity.[5]
"Qualified immunity shields federal and state officials from money damages unless a plaintiff
pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that
the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd,
563 U.S. 731, 735 (2011).  "An officer is entitled to qualified immunity against a suit for false
arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff."  Garcia,
779 F.3d at 92 (quoting Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir. 2013)).
"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to
believe that probable cause existed, or (b) officers of reasonable competence could disagree on
whether the probable cause test was met."  Zalaski 723 F.3d at 390.

Even drawing all reasonable inferences in Jelen's favor, the Warrant's conditional
language was unambiguous.  Stated differently, no reasonable officer could conclude that the
term "release" required him or her to wait for Jelen to step out of the hospital before arresting

---

[5]     "The Supreme Court has made clear that qualified immunity can be established by the facts alleged in a
complaint."  Garcia v. Does, 779 F.3d 84, 97 (2d Cir. 2015) (citing Wood v. Moss, 572 U.S. 744 (2014)); see also
McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) ("[W]e see no reason why . . . a traditional qualified
immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing
on the face of the complaint.")

him.  Cf. Simon, 893 F.3d at 88, 96–99, n.5 (defendants not entitled to qualified immunity where "the warrant [unambiguously] required the defendants to produce [the detainee] to court on August 11, 2008, at 10:00 a.m., but they instead detained her for 18 hours over August 11 and 12, occasionally interrogated her about a crime, and never presented her to a judge").

ii.  Eighth Amendment Violations

Jelen also claims that Kamrowski, Brown, and Santos violated his Eighth Amendment rights.  His Eighth Amendment claims fall into four categories: (1) deprivation of toilet paper and toilet access; (2) deliberate indifference to medical needs; (3) verbal assault; and (4) excessive use of physical force.

a.  Deprivation of Toilet Paper and Toilet Access

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'"  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)).  "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  Walker, 717 F.3d at 125.  "[T]here is no static test" to determine whether a deprivation is sufficiently serious; rather, the "conditions themselves must be evaluated in light of contemporary standards of decency."  Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995).  "To meet the subjective element, the plaintiff must show that the defendant acted with 'more than mere negligence.'"  Walker, 717 F.3d at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)).

12

Jelen claims that unidentified marshals refused to provide him with toilet paper when in a holding cell.  The Second Circuit has "recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement." Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003).  However, "in Bivens actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006).  And Jelen only alleges that he requested toilet paper from unnamed marshals who passed by his holding cell.  (Am. Compl. ¶ 35.)  That is insufficient.  Since Jelen has not pled that Kamrowski, Brown, Santos, or Greco were personally involved in the alleged deprivation of toilet paper, his claim against them is dismissed.

Jelen also claims that he was denied access to a toilet while in the custody of Kamrowski, Brown, and Santos.  "It is well established that . . . confinement in a cell without a toilet . . . can result in an Eighth Amendment violation when severe enough or sustained over a long enough period of time."  Walker v. Schriro, 2013 WL 1234930, at *13 (S.D.N.Y. Mar. 26, 2013) (citations omitted); see also D'Attore v. New York City, 2015 WL 556778, at *10 (S.D.N.Y. Feb. 10, 2015).  Here, Jelen concedes that his holding cell had a toilet, and the Amended Complaint otherwise fails to allege any instance where Jelen requested access to a bathroom from Kamrowski or Brown.  (See Am. Compl. ¶ 35.)  Thus, this claim against Kamrowski and Brown is dismissed.

Similarly, Jelen's claim for denial of access to a toilet against Santos is baseless. Jelen contends that Santos ignored his request to use a bathroom and instead seated him in a van and transported him from the Westchester Jail to the White Plains Courthouse.  Even considering his gastrointestinal ailments, Jelen's temporary inability to use the bathroom while being shuttled to the White Plains Courthouse does not satisfy the objective prong of the Eighth Amendment

analysis.  See Smolen v. Wesley, 2019 WL 4727311, at *11 (S.D.N.Y. Sept. 25, 2019)

(dismissing Eight Amendment claim where "[p]laintiff allege[d] that while he was being

transported to an external medical facility . . . he was denied the use of a urinal"); Jones v.

Marshall, 2010 WL 234990, at * 3 (S.D.N.Y. Jan. 19, 2010) ("[C]ase law has established that

temporary denial of a bathroom does not establish the existence of an objective injury for

purposes of an Eighth Amendment claim."); Whitted v. Lazerson, 1998 WL 259929, at *1–2

(S.D.N.Y. May 21, 1998) (no Eighth Amendment violation where plaintiff was denied access to

bathroom for nearly 90 minutes, "forc[ing] [him] to hold his bowel movements at painful levels,

and at times partially urinat[ing] and defecat[ing] in his clothing"); cf. Hart v. City of New York,

2013 WL 6139648, at *7–8 (S.D.N.Y. Nov. 18, 2013) (sustaining Eighth Amendment claim

where plaintiff alerted officers to preexisting condition of frequent urination but was repeatedly

denied access to bathroom for 12 hours).[6]

       Moreover, Jelen has not pled that Santos possessed the requisite state of mind.

The Amended Complaint alleges only that Jelen informed Santos that he suffered from Crohn's

disease.  However, Jelen does not allege that Santos knew he was in pain, bleeding rectally, or

needed to cleanse his perianal fistulas.  To be sure, this Court is obligated to liberally construe

the Amended Complaint, but "even pro se plaintiffs asserting civil rights claims are not exempt

from Twombly's threshold that the pleadings must contain factual allegations sufficient to raise a

'right to relief above the speculative level.'"  Arias-Mieses v. CSX Transp., Inc., 630 F. Supp. 2d

328, 331 (S.D.N.Y. 2009).  Because Jelen fails to satisfy both the objective and subjective

prongs of his toilet access claim, his claim is dismissed.

---

[6]     To the extent Jelen asserts an Eighth Amendment claim because he was only afforded access to an inoperative toilet while at the White Plains Courthouse, (Am. Compl. ¶ 57), that claim is dismissed.  See Odom v. Keane, 1997 WL 576088, at *4–5 (S.D.N.Y. Sept. 17, 1997) (concluding that exposure to inoperative toilet for 10 hours a day over several months did "not amount to cruel and unusual punishment").

b.   Deprivation of Medical Needs

Jelen also alleges that Kamrowski and Brown exhibited deliberate indifference to his serious medical needs while awaiting admission to the Westchester Jail.  Deliberate indifference claims are also two-pronged.  First, Jelen must demonstrate that the alleged medical need is "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quotation marks omitted).  Second, he must show that the government official acted with a "sufficiently culpable state of mind."  Hill, 657 F.3d at 122.  "That is, the official must 'know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Hill, 657 F.3d at 122 (alterations in original) (quoting Farmer, 511 U.S. at 837).

"Crohn's disease is undoubtedly a serious medical condition," Benn v. Nassau County, 2010 WL 2976540, at *6 (E.D.N.Y. July 22, 2010), but the analysis does not end with that determination.  Where "the basis for a prisoner's Eighth Amendment claim is a temporary delay in the provision" of medical care, "it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis removed) (quotation marks omitted).  Indeed, "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, [and] not every lapse in prison medical care will rise to the level of a constitutional violation."  Smith, 316 F.3d at 184. Here, Jelen waited "almost one[] hour" for admission to the Westchester Jail.  (Am. Compl.

¶ 50.)  During that short span, he asked three times to be taken to a hospital because of rectal bleeding and "agonizing pain."  (Am. Compl. ¶ 43.)  Kamrowski and Brown refused Jelen's requests and declined to give him prescription pain medication.  (See Am. Compl. ¶¶ 43–49.)

Kamrowski and Brown's refusal to transport Jelen to a hospital while waiting briefly to admit Jelen to the Westchester Jail does not amount to a constitutional violation.  As an initial matter, "[c]ourts in this Circuit have repeatedly held that pain experienced for even longer than two to three hours does not rise to the level of an Eighth Amendment violation." Mitchell v. N.Y.C. Dep't of Corr., 2011 WL 503087, at *4 (S.D.N.Y. Feb. 14, 2011) (collecting cases); see Alster v. Goord, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (no Eighth Amendment violation where corrections officers waited two days before sending plaintiff to hospital after complaining of abdominal pain).  Moreover, even drawing all reasonable inferences in Jelen's favor, this Court cannot ignore the Amended Complaint's allegations that: (1) Jelen was examined by an MCC physician before being taken to the Westchester Jail, (Am. Compl. ¶ 38); (2) following the examination, the MCC physician recommended that Jelen not be taken back to the hospital, (Am. Compl. ¶ 89(v)(B)); and (3) Kamrowski arranged for Jelen to be transferred to the Westchester Jail, which contains an in-house medical facility, (Am. Compl. ¶¶ 45, 52–53).  In view of these allegations, Jelen's claim that Kamrowski and Brown exhibited deliberate indifference to his medical needs is implausible.  Cf. Samuels v. Fischer, 168 F. Supp. 3d 625, 649 (S.D.N.Y. 2016) (plaintiff stated Eighth Amendment claim where "[d]efendants took custody of [p]laintiff— beaten and bloodied—from a medical professional who determined that [p]laintiff needed outside medical care, and left him to languish in excruciating pain for hours").

### c.   Verbal Harassment

Additionally, Jelen claims he was verbally harassed by Kamrowski while in transit to the Moynihan Courthouse and the Westchester Jail.  The alleged harassment "does not rise to the level of a constitutional violation."  Banks v. County of Westchester, 168 F. Supp. 3d 682, 691 (S.D.N.Y. 2016); Snoussi v. Bivona, 2008 WL 3992157, at *7 (E.D.N.Y. Aug. 22, 2008) ("[V]erbal harassment alone is not . . . a cognizable claim under Bivens . . . .").  Jelen's claim is dismissed.

### d.   Excessive Force

Jelen also alleges that Kamrowski employed excessive force by "violently [swinging him] around and push[ing] him against a bulletin board" while another marshal replaced Jelen's handcuffs.  (Am. Compl. ¶ 40.)  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson v. McMillian, 503 U.S. 1, 9–10 (1992) (quotation marks omitted).  And "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim."  Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (quotation marks omitted).  Notably, Jelen does not allege any resulting pain or injury from the incident. "Where, as here, a plaintiff alleges only a degree of roughness that is common in prison contexts, and has not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim."  Vogelfang v. Capra, 889 F. Supp. 2d 489, 507 (S.D.N.Y. 2012). Accordingly, Jelen's excessive force claim is dismissed.

iii.   <u>Fifth Amendment Violations</u>

Jelen alleges that Santos—in violation of the magistrate judge's orders—obstructed his ability to retrieve personal property taken by Kamrowski at Beth Israel.[7]  This Court construes Jelen's allegations as asserting a <u>Bivens</u> claim for intentional deprivation of property under the Due Process Clause of the Fifth Amendment.  <u>See</u> <u>Polanco v. U.S. Drug Enf't Admin</u>, 158 F.3d 647, 650 (2d Cir. 1998); <u>Adekoya v. Fed. Bureau of Prisons</u>, 381 F. App'x 35, 37 (2d Cir. 2010) (summary order).  "[A] mere allegation of property deprivation does not by itself state a constitutional claim."  <u>Hudson v. Palmer</u>, 468 U.S. 517, 539 (1984).  A plaintiff must also allege that he was "deprive[d] . . . [of] due process of law."  <u>Palmer</u>, 468 U.S. at 539.  In evaluating due process claims, "the Supreme Court has distinguished between (a) claims based on established [government] procedures and (b) claims based on random, unauthorized acts by [government] employees."  <u>Rivera-Powell v. N.Y.C. Bd. of Elections</u>, 470 F.3d 458, 465 (2d Cir. 2006).  "When an intentional deprivation of property was 'random and unauthorized' rather than the result of an established [governmental] policy or procedure . . . due process is satisfied if a meaningful post-deprivation remedy is provided."  <u>Jones v. Fed. Bureau of Prisons</u>, 2013 WL 5300721, at *12 (E.D.N.Y. Sept. 19, 2013) (citing <u>Rivera-Powell</u>, 470 F.3d at 465); <u>see also</u> <u>D'Amario v. United States</u>, 56 F. Supp. 3d 249, 254–55 (W.D.N.Y. 2014).

Santos's actions as pled in the Amended Complaint are "random and unauthorized."  Jelen contends that Santos disobeyed the magistrate judge and "refused to coordinate the return of [his] property."  (Am. Compl. ¶ 68.)  Accordingly, to state a claim for a constitutional violation of due process, Jelen must demonstrate the unavailability of meaningful post-deprivation remedies through which to seek redress.  However, as several courts have

---

[7]     The Amended Complaint is unclear about what property Jelen recovered.  It appears that Jelen's overcoat, which he values at $720, was not returned to him.  (Am. Compl. ¶ 109(B).)

concluded, Jelen "could have filed a claim with the Attorney General to settle claims for losses of up to $50,000 caused by law enforcement personnel" pursuant to 31 U.S.C. § 3724.  Jones, 2013 WL 5300721, at *12; see also Frith v. Hill, 2009 WL 3073716, at *17–18 (S.D.N.Y. Sept. 23, 2009).  The availability of the post-deprivation procedures afforded by § 3724 precludes a Bivens claim.[8]

III.    The Westchester Defendants

Construed liberally, the Amended Complaint alleges that the Westchester Defendants conspired to violate—and violated—Jelen's Fourth and Eighth Amendment rights under 42 U.S.C. §§ 1983 and 1985(3).  Jelen claims that the Westchester Defendants did not verify that Kamrowski and Brown properly executed the Warrant when they arrived at the Westchester Jail, thereby prolonging the false arrest.  Once admitted to the Westchester Jail, Jelen claims he received inadequate medical care from nurses, who denied access to prescription pain medication.  And leaving no stone unturned, Jelen attributes some of this alleged unlawful activity to the fact that he is a white male.  (See Am. Compl. ¶ 89(viii)(C).)

A.    Claims Against Spano[9]

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, to state a § 1983 claim, Jelen must allege that Spano was "personally involved" in the alleged violations of his constitutional rights.  Provost v.

---

[8]     Jelen also alleges that Santos submitted an affidavit to the magistrate judge stating, in part, that Jelen checked himself into the hospital for psychiatric reasons before his arrest.  The Federal Defendants concede that Santos's assertion was erroneous.  While Jelen claims that Santos's statement was a "patent lie" designed to convince the magistrate judge to keep Jelen in custody, he offers no support for that conclusory allegation.  (Am. Compl. ¶ 60).  And he cannot show any injury because the magistrate judge released him.

[9]     Since Jelen seeks money damages from Spano, this Court presumes Spano is sued in his individual capacity.  See Jackson v. Pataki, 2001 WL 228136, at *6 n.1 (S.D.N.Y. Mar. 7, 2001).

City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).  To establish personal involvement, a plaintiff must allege that the defendant: (1) participated directly in the alleged constitutional violation; (2) was made aware of the wrongs and failed to remedy them; (3) created or allowed a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating unconstitutional acts were occurring.  Brandon v. Kinter, 938 F.3d 21, 36–37 (2d Cir. 2019).

To plead a conspiracy claim under § 1985(3), a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (quotation marks omitted).  "The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."  Dolan, 794 F.3d at 296 (quotation marks omitted).  Critically, "a plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."  Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999).  This includes allegations "establish[ing] the existence of an agreement . . . to deprive [the plaintiff] of his constitutional rights."  Thomas, 165 F.3d at 147.

The Amended Complaint is devoid of any allegations concerning Spano's personal involvement in the alleged constitutional violations, which necessarily bars Jelen's § 1983 claim.  And the Amended Complaint fails to plead a conspiracy, which dooms his § 1985

claim.  That is, none of the allegations in the Amended Complaint even remotely suggest that Spano agreed with anyone to deprive Jelen of his constitutional rights.

        B.  <u>Claims Against Westchester County</u>

        Municipalities cannot be held liable in a § 1983 action solely on the basis of <u>respondeat superior</u>.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).  Indeed, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  <u>Monell</u>, 436 U.S. at 691.  Thus, "[t]o hold a municipality liable in such an action, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995) (quotation marks omitted).  "The same requirements apply to a claim for municipal liability under § 1985."  <u>Smith v. City of New York</u>, 290 F. Supp. 2d 317, 321 (E.D.N.Y. 2003).  Notably, the "mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  <u>Zahra</u>, 48 F.3d at 685.

        The Amended Complaint is insufficient to sustain <u>Monell</u> claims based on the alleged violations of Jelen's Fourth and Eighth Amendment rights.  As to his Fourth Amendment claim, the Amended Complaint contains no facts whatsoever concerning a policy or custom maintained by Westchester County that resulted in the alleged false arrest.  Similarly, as to his Eighth Amendment claim, the Amended Complaint baldly states that "non-white medical detainees are provided with their medications . . . ."  (Am. Compl. ¶ 89(viii)(C).)  This lone allegation cannot sustain a <u>Monell</u> claim.  <u>See, e.g.</u>, <u>Brodeur v. City of New York</u>, 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002) (dismissing <u>Monell</u> claim where plaintiff "flatly

assert[ed] that the [municipal defendant] had a policy of 'stifling, discouraging and suppressing' critics of the former Mayor and his administration by arresting them").

IV.     The Beth Israel Defendants

Jelen asserts a claim for medical malpractice under New York law against the Beth Israel Defendants.  Specifically, he alleges that the Beth Israel Defendants unlawfully discharged him and impermissibly shared his confidential medical records with third parties. The Beth Israel Defendants argue that this Court lacks subject matter jurisdiction because Jelen has not alleged diversity of citizenship.[10]

Under 28 U.S.C. § 1332(a)(1), a district court has subject matter jurisdiction over a civil action if the matter in controversy exceeds $75,000 and is between citizens of different states.  "This statute is to be strictly construed against finding jurisdiction." Deajess Med. Imaging, P.C. v. Allstate Ins. Co., 381 F. Supp. 2d 307, 310 (S.D.N.Y. 2005) (citing Healy v. Ratta, 292 U.S. 263, 270 (1934)).  "In an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced." Universal Licensing Corp. v. Paola del Lungo S.p.A, 293 F.3d 579, 582 (2d Cir. 2002); see also Grupo Dataflux v. Atlas Glob. Grp., 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." (quotation marks omitted)).  As noted above, "[w]hen a defendant challenges a plaintiff's grounds for diversity, the plaintiff must prove 'by a preponderance of the evidence that it exists.'" Cornwell Mgmt. Ltd. v. Thor United Corp., 2013 WL 5548812, at *3 (S.D.N.Y. Oct. 8, 2013) (quoting Makarova, 201 F.3d at 113).

---

[10]     This Court plainly lacks federal question jurisdiction over Jelen's medical malpractice claim because it arises wholly under New York law.  See 28 U.S.C. § 1331.

For purposes of diversity jurisdiction, citizenship is based on domicile.  <u>Linardos v. Fortuna</u>, 157 F.3d 945, 947 (2d Cir. 1998).  Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another.  <u>Miss. Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 48 (1989).  A party's domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."  <u>Linardos</u>, 157 F.3d at 948 (quotation marks omitted).  "A person has only one domicile at any given moment . . . ."  <u>Van Buskirk v. United Grp. of Cos., Inc.</u>, 935 F.3d 49, 53 (2d Cir. 2019).  "Factors frequently taken into account [in ascertaining domicile] include current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes."  <u>Bank of India v. Subramanian</u>, 2007 WL 1424668, at *3 (S.D.N.Y. May 15, 2007).  Courts also consider "whether the person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc."  <u>Nat'l Artists Mgmt. Co. v. Weaving</u>, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).  No single factor is determinative.  <u>Weaving</u>, 769 F. Supp. at 1228.

The initial complaint in this action stated that Jelen resided in Breezy Point, New York.  (ECF No. 1.)  Notably, that complaint alleged claims against the Beth Israel Defendants arising under <u>both</u> state and federal law, including 42 U.S.C. § 1983.  However, during a September 20, 2018 conference, this Court advised Jelen that he could not maintain his federal claims against the Beth Israel Defendants and afforded him an opportunity to amend his complaint.  (PMC Tr., at 3.)  When Jelen filed the Amended Complaint, he jettisoned his substantive federal claims against the Beth Israel Defendants and lodged only a state law claim

for medical malpractice.  In an effort to shoehorn that state claim into this action, Jelen now

alleges that he is not a New York resident, but rather a resident of Pennsylvania.[11]  (Am. Compl.

¶ 1.)  The Beth Israel Defendants contend that this alteration is an attempt to manufacture

diversity.

        In opposing the Beth Israel Defendants' motion to dismiss, Jelen maintains that he

owns homes in both New York and Pennsylvania.  He avers that his New York residence is

merely a "beach house used for [his] convenience while in [New York City]" and that the

Pennsylvania residence is his "one, true domicile."  (Opp'n, at 4.)  Jelen further claims that he

has a Pennsylvania driver's license, files taxes in Pennsylvania, and lists his Pennsylvania home

as his primary residence on various documents.  (See ECF No. 110, at 1–2; ECF No. 113, at 1–

3.)

        But while Jelen claims to have a Pennsylvania driver's license, the Amended

Complaint alleges that Kamrowski collected Jelen's "NY driver[']s license" at the time of his

arrest.  (Am. Compl. ¶ 30.)  Additionally, Jelen alleges that his Crohn's disease requires constant

care and that his gastroenterologist is located in New York.[12]  (Am. Compl. ¶¶ 16, 20.)

Moreover, during Jelen's appearance before a magistrate judge on January 18, 2018—a week

before he filed this action—Jelen's court-appointed counsel represented that his client was "a

lifelong resident of New York," who had "lived at that address in Breezy Point for at least three

or four years now."  (ECF No. 105-2, at 7–8.)  The attorney also stated that: (1) Jelen resided at

his Breezy Point home with his young daughter; (2) Jelen was under pre-trial supervision in the

---

[11]      Neither the initial complaint nor the Amended Complaint allege citizenship.

[12]      In the Amended Complaint, Jelen identifies his gastroenterologist as Dr. Jack Braha.  (Am. Compl. ¶ 20.)
This Court takes judicial notice of the fact that Dr. Braha's medical office is located at 2211 Emmons Avenue,
Brooklyn, New York, approximately 7.4 miles by car from Jelen's home in Breezy Point.

Eastern District of New York; and (3) Jelen's parents and sister all lived in New York.[13]  (ECF No. 105-2, at 7–8.)  The transcript of the proceeding before the magistrate judge contains no indication that Jelen objected to or attempted to correct his counsel's representations to the court.

And last—but certainly not least—at his sentencing in the Middle District of Pennsylvania on January 31, 2018, Jelen represented to the district judge that he lived in Breezy Point "year round."  (Sentencing Tr., at 38.)

In view of these facts, this Court concludes that Jelen fails to carry his burden to demonstrate complete diversity with the Beth Israel Defendants at the time he commenced this action.  See Vail v. Rochester Gen. Hosp., 2019 WL 5157027, at *2 (W.D.N.Y. Oct. 15, 2019) (dismissing claim for lack of subject matter jurisdiction where "[p]laintiff learned about the need for complete diversity at some time between the filing of the original Complaint and the filing of the Amended Complaint, and changed the factual averment concerning his citizenship in order to create complete diversity").  Therefore, this Court lacks subject matter jurisdiction over Jelen's state law medical malpractice claim.

The Beth Israel Defendants also contend that this Court should decline to exercise supplemental jurisdiction over Jelen's medical malpractice claim.  Having dismissed all of Jelen's federal claims, this Court agrees.  Indeed, a "district court may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims."  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 83 (2d Cir. 2018).  "But, because there will be cases where dismissal will not be appropriate simply by virtue of the fact that the federal-law

---

[13]     It is hard to imagine that a defendant charged in the Middle District of Pennsylvania would be supervised by a pre-trial services officer in the Eastern District of New York unless the defendant actually resided there.

claims have been eliminated prior to trial, district courts must still conduct the inquiry and carefully evaluate the relevant factors," including judicial economy, convenience, fairness, and comity.  Catzin, 899 at 83; see also Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004).

Here, declining to exercise supplemental jurisdiction will not run afoul of those factors.  Although this action has been pending for approximately two years, it has not advanced beyond the pleading stage, and the parties have not conducted any discovery.  See, e.g., Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.C., 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); Gutierrez Chacon v. P&S Select Foods, Inc., 2019 WL 6170423, *6 n.2 (S.D.N.Y. Nov. 19, 2019) (declining to exercise supplemental jurisdiction where "litigation ha[d] been pending for two years" but the case was "by no means the eve of trial and both parties ha[d] been given ample opportunity to be heard"); Harris v. NYU Langone Med. Ctr., 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014) ("[D]eclining jurisdiction would not disserve judicial economy, convenience, or fairness, as Plaintiff's federal claims are being dismissed relatively early in the litigation, before Defendant's answer and the commencement of discovery.")  Accordingly, Jelen's medical malpractice claim is dismissed without prejudice to repleading in state court.

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are granted.  This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion & Order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motions pending at ECF Nos. 66, 73, and 85 mark

this case as closed.

Dated: March 30, 2020
        New York, New York


                        SO ORDERED:


                        _____
                        WILLIAM H. PAULEY III
                        U.S.D.J.